Johnson, J.
The bill of exceptions, which embodies the evidence and charge of the court, with the refusal to charge as requested, and the exceptions thereto, is not properly a part of the record within the rule in Hill v. Bassett, 27 Ohio St. 597; and Burk v. P. C. & St. L. R. R., 28 Ohio St. 643.
As in the case of Smith v. Board of Education, 27 Ohio St. 44, the bill of exceptions, not having been made part of the record, must be disregarded, upon error to this court.
The only question that is presented by this record is, as to the sufficiency of the petition to support a cause of action.
In' the absence of a bill of exceptions, we must presume that all the allegations of the petition were supported by proof of' the facts alleged. If those facts do not warrant a recovery, the judgment must be reversed.
There is no averment in the petition that there was a min-able vein of coal on this land. If this averment is necessary to a statement of a cause of action under this contract, then the defect is not cured by verdict. C. & P. R. R. Co. v. Stackhouse, 10 Ohio St. 567.
"Was the plaintiff required to aver and prove that minable coal existed on this land \
If so, the judgment must be reversed.
It is true there was no demurrer to this petition, for want of such an averment, but if it is an essential averment, there can be no recovery without it, as no cause of action was stated. It does not belong to that class of cases where there is a defective statement of the facts constituting a cause of action, which may be cured by verdict, but to that class *179 where there is a failure to state a fact essential to a cause of ■action.
If there was no minable coal on this land, there could be no recovery for the annual rent, and of course, none for coal mined. The contract, in that event, would be of no value to either party.
It is manifest from a cursory reading of this instrument, that whether coal existed on this land, was unknown to the parties.
If it did, in fact, exist, its discovery would enhance the value of plaintiff’s land. The expense of making the necessary test, would doubtless be considerable. It was an inducement to a sale of the coal on the terms specified, that this test should be made at the expense of the lessees.
Hence, the lessor granted to the lessees the exclusive right to make this test, as well as to mine the coal, if discovered, and bound them to make it within a given time free of cost to him.
He reserved no right to make the test, even if willing to incur the expense.
Unless the lease was abandoned, or in some other way terminated, the exclusive right to the possession of the premises, for the purpose of searching for coal as well as for mining purposes, was vested in the lessees, and it was within their power to prevent any such test by the lessor as would be necessary for him to make, in order to enable him to aver and prove the existence of minable coal, if this burden is upon him.
In short, the lessees could retain this valuable privilege for twenty years, and obstruct the lessor from making the search for coal, without any payment, unless, at the termination of the lessees’ exclusive right to make the test, the lessor should at his own expense, make the necessary search, to enable him to aver and prove the existence of minable coal.
It is said the failure to make the test within the time, subjected the lessees to an action for damages for breach of this stipulation. Admit this, but if the burden of proving that there is minable coal on the land is essential to a recovery in the case at bar, it is equally so in such an action, and hence *180 the plaintiff would be required to do that which the lessees-have reserved the exclusive right to do, i. e., test the land. Such a construction of this lease would be grossly inequitable, and would practically defeat any action, except to recover for' coal actually mined, or for rent per annum where the lessees had made the test and found coal, but failed thereafter to minetbe same. _ .
Again, it is expressly provided that should the lessees fail to-commence mining within one year from the construction of tiie railroad, then they agree to pay $150 per annum thereafter, but such payments when made shall be treated as advance payments on coal to be subsequently mined.
This clause, in connection with the one granting the exclusive right to test for coal and to mine the same, if found, casts upon the lessees the burden, where no test has been made, of showing, in order to escape payment of this annual sum, that there was, in fact, no coal on the land.
The lessees reserved the right to abandon the premises at any time. From the judgment in lessor’s favor upon the issues, it appears they did not’surrender or abandon, but retained possession. They did nothing to develop the coal, if any was there. As they had the exclusive right to make the test, no one else could. They alone possessed the power ’to ascertain by a satisfactory method this important fact. It seems to us,, therefore, that while the ' exclusive right to test this land is retained by the lessees, the burden is upon them, in order to-defeat a recovery, to aver and prove the non-existence of coal in minable quantity and quality.
Much stress is laid upon the clause which provides that these annual payments “shall be treated as advance payments on coal to be subsequently mined,” and it is insisted that they are to be treated as advance payments on coal, and hence, if there is no coal, there can be no recovery.
We have already stated, that if, in fact, there was no minable coal, there could 'be no recovery, and this is all that this argument proves.
The fact that if coal is thereafter mined, these annual payments shall be treated as advances upon coal thereafter mined, *181 ■does not settle the question of pleading now before lis, as to whose duty it is to aver and prove the existence or nonexistence of coal.
Again, suppose the fact was established by the tests made by the lessees, that coal did exist in minable quantities, but the lessees refused to mine the same, the annual rent would nevertheless be payable, and could not be recovered back as .advance payments on coal not mined. In such a case, it would be at the option of the lessees to lose these payments made, by not mining thereafter, or by mining to have credit on the coal thereafter mined.
This contract is anomalous, and evinces great skill in guarding the interests of the lessees, but we think there is a clear ■duty imposed on them, when called on for payment of the annual rent stipulated to be paid on failure to mine coal; to ■show, either by an actual test, or by other competent evidence, that in fact there was no coal on the premises, in order to defeat a recovery.
This conclusion is in accordance with the familiar principle, that when, by law. or contract, a duty is imposed upon a party, the burden of relieving himself of that duty rests upon him.
Judgment of the district court reversed and that of common pleas affirmed.
Boynton, J., dissented from the judgment.